1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **Wells Fargo Insurance Services, Inc.,** a North Carolina corporation; and **USI Insurance Services LLC**, a Delaware limited liability company, <br><br>          Plaintiffs, <br><br>        vs. <br><br> **Lockton Companies, LLC-Pacific Series**, a Missouri limited liability company; and **Shirley Gordon**, an individual, <br><br>          Defendants. | Case No. <br><br> **COMPLAINT AND JURY DEMAND** |

For their Complaint against Defendants, Plaintiffs Wells Fargo Insurance Services USA, Inc. ("Wells Fargo" or the "Company"), and USI Insurance Services LLC ("USI"), by and through their undersigned counsel, Fisher & Phillips LLP, hereby allege facts, assert claims, and pray for relief as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves claims asserted under 18 U.S.C. § 1030 *et seq.* and 18 U.S.C. § 1831 *et seq.*

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

*EXHIBIT "C"*

2.      The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over state law claims.

3.      Subject matter jurisdiction also exists by virtue of diversity of citizenship, 28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship. Injunctive relief is also sought pursuant to FRCP 65.

4.      Venue in this Court is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the jurisdiction of the United States District Court for the Western District of Washington at Seattle.

## II.      **THE PARTIES**

5.      Plaintiff Wells Fargo is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Charlotte, North Carolina.

6.      Plaintiff USI is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Valhalla, New York.  USI's sole member is USI, Inc., which is a Delaware corporation with its principal place of business in New York.

7.      Effective on or about December 1, 2017, USI acquired all of the stock of Wells Fargo pursuant to a stock purchase agreement.  Wells Fargo continues to exist as a separate entity.

8.      Defendant Lockton Companies, LLC-Pacific Series ("Lockton"), is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri.  On information and belief, Lockton's sole member is Lockton Management, LLC.  On information and belief, the sole member of Lockton Management, LLC, is Lockton Insurance Agency, Inc., which is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Missouri.

COMPLAINT AND JURY DEMAND - Page 2

FPDOCS 33504083.2

9. Defendant Shirley Gordon ("Gordon") is an individual and a former Wells Fargo employee employed at the Wells Fargo office located in Seattle, Washington, as National Service Manager for Wells Fargo's Private Risk Management group. Gordon resigned from her employment with Wells Fargo on November 28, 2017, and on information and belief immediately began employment with Lockton. Gordon is a resident and citizen of the State of Washington and resides in Edmonds, Washington.

## III.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.   The Parties' Relationships.

10. Wells Fargo is an insurance broker licensed in the State of Washington and is engaged in the business of selling and providing insurance services and products to its clients/customers and prospective clients/customers (the terms "clients" and "customers" are used interchangeably in this Complaint).

11. USI is an insurance brokerage and consulting firm that delivers property and casualty, employee benefits, personal risk, program and retirement solutions to large risk management clients, middle market companies, smaller firms, and individuals.

12. Lockton is an insurance broker and, on information and belief, is a constituent entity of Lockton Companies, LLC, described on its website as "the world's largest privately held, independent insurance broker" (http://www.lockton.com/the-lockton-story).

13. Gordon is a former Wells Fargo employee employed at the Wells Fargo office located in Seattle, Washington, as National Service Manager for Wells Fargo's Private Risk Management group. Gordon resigned from her employment with Wells Fargo on November 28, 2017, and on information and belief immediately began employment with Lockton. The Private Risk Management group sells insurance to individuals, for example home and automobile insurance. The value in annual commissions to Wells Fargo of the business of the group Gordon led was approximately $25 million.

COMPLAINT AND JURY DEMAND - Page 3

**FISHER & PHILLIPS LLP**
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2

14.  At the inception of Gordon's employment with Wells Fargo, and in consideration of her becoming employed and being compensated by Wells Fargo, Gordon entered into an agreement with Wells Fargo that prohibited her, both during her employment with the Company and at any time thereafter, from using or disclosing any trade secrets or confidential information of Wells Fargo or information about the customers of Wells Fargo. The agreement also required Gordon, upon her resignation, to immediately return to Wells Fargo all of its records and confidential information, including but not limited to information stored on computers and other electronic devices.

15.  In addition, the agreement provided that for two years after her resignation or other termination from employment with Wells Fargo, Gordon was (1) not to solicit, recruit, or promote the solicitation or recruitment of any employee of Wells Fargo for the purpose of encouraging that employee to leave employment with Wells Fargo; and (2) not to solicit, participate in, or promote the solicitation of any Wells Fargo client, customer, or prospective customer with whom Gordon had material contact or regarding whom she received confidential information, for the purpose of providing competitive products or services.

16.  Even while still an employee with Wells Fargo, Gordon transmitted trade secrets and confidential information of Wells Fargo, including information regarding Wells Fargo customers and employees, from Wells Fargo's computer system to her personal e-mail address, without proper authority, and failed to return such information to Wells Fargo upon her resignation or thereafter.  On information and belief, Gordon has used and is using Wells Fargo's trade secrets and confidential information for her own benefit and that of her new employer, Lockton, in order to solicit or promote the solicitation of Wells Fargo customers to terminate their relationship with Wells Fargo and give their business to Gordon and/or Lockton.

**B.  Wells Fargo's Business and Operations.**

17.  A key and principal part of Wells Fargo's business is providing insurance products and services that are unique to the particular needs and specifications of its clients

COMPLAINT AND JURY DEMAND - Page 4

FPDOCS 33504083.2

and customers.  Information concerning Wells Fargo's customers and the details of their insurance needs and policies, including but not limited to non-public internal procedures, programs, and forms, non-public lists of prospective and insured customers, non-public information compiled on behalf of Wells Fargo regarding such facts as habits and insurance needs of customers and prospective customers, locations and descriptions of insured properties or properties proposed to be insured, expiration dates of insurance policies, and insurance daily reports (hereinafter "Confidential Information," which is further defined below), is considered and treated as highly confidential within Wells Fargo and is not shared with anyone outside of the Company.

18.  Wells Fargo has developed and maintained its Confidential Information through considerable expenditure of time, effort, and expense.

19.  In addition to the time, effort, and money spent to develop this Confidential Information, Wells Fargo has also expended significant time, effort, and money to develop relationships with its customers; to learn the particular insurance needs, specifications, and requirements of its customers; to develop substantial contacts and goodwill with customers; and to market and sell its insurance products and services to those customers.

20.  Wells Fargo considers and treats all of its Confidential Information as having substantial competitive value to Wells Fargo.

21.  Wells Fargo's Confidential Information is neither generally known nor readily ascertainable by proper means from publicly available sources; is related directly to and used by Wells Fargo's business; and provides Wells Fargo with a competitive advantage over those who do not know this information.  The possession of Wells Fargo's Confidential Information would give competitors, particularly those like Lockton that compete directly with Wells Fargo by providing similar insurance brokerage services in the same area as Wells Fargo, an

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

1   unfair economic advantage in developing, marketing, brokering, and selling competitive

2   insurance services and products.

3       22.     Wells Fargo therefore has consistently used, and continues to use, reasonable

4   and diligent efforts to protect and keep secret its Confidential Information.  These efforts

5   include, but are not limited to, prohibiting access to the information by the general public;

6   requiring employees to sign confidentiality agreements; limiting general employee access to

7   the information; instructing employees not to share the information with competitors; and

8   restricting access to its Confidential Information to Wells Fargo employees who agree to

9   maintain its confidentiality and to use the Confidential Information only for the benefit of

10  Wells Fargo.

11  **C.      Gordon's Agreement with Wells Fargo.**

12      23.     At the inception of her employment with Wells Fargo, and in consideration for

13  becoming employed and being compensated by Wells Fargo, Gordon signed and entered into a

14  Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation,

15  and Assignment of Inventions ("Agreement").

16      24.     Section II of the Agreement is headed "Trade Secrets And Confidential

17  Information" and provides:

18
19  > During the course of my employment I will acquire knowledge of the
    > Company's Trade Secrets and other proprietary information relating to its
20  > business, business methods, personnel, and customers (collectively referenced
    > as "Confidential Information"). "Trade Secrets" are defined as information,
21  > including but not limited to, a formula, pattern, compilation, program, device,
    > method, technique, or process, that: (1) derives independent economic value,
22  > actual or potential, from not being generally known to the public or to other
    > persons who can obtain economic value from its disclosure or use; and (2) is
23  > the subject of efforts that are reasonable under the circumstances to maintain
    > its secrecy. The Company's Trade Secrets include, but are not limited to, the
24  > following:

25
26  > • the names, address, and contact information of the Company's
    >   customers and prospective customers, as well as any other personal or

COMPLAINT AND JURY DEMAND - Page 6

financial information relating to any customer or prospect, including, without limitation, account numbers, balances, portfolios, maturity and/or expiration or renewal dates, loans, policies, investment activities, purchasing practices, insurance, annuity policies and objectives;

• any information concerning the Company's operations, including without limitation, information related to its methods, services, pricing, costs, margins and mark ups, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques, agent information, and processes;

• any other proprietary and/or confidential information relating to the Company's customers, employees, products, services, sales, technologies, or business affairs.

I understand that Records of the Company also constitute Confidential Information and that my obligation to maintain the confidentiality thereof continues at all times during and after my employment. "Records" include, but are not limited to, original, duplicated, computerized, memorized, handwritten or any other form of information, whether contained in materials provided to me by the Company, or by any institution acquired by the Company, or compiled by me in any form or manner including information in documents or electronic devices, such as software, flowcharts, graphs, spreadsheets, resource manuals, videotapes, calendars, day timers, planners, rolodexes, or telephone directories maintained in personal computers, laptop computers, personal digital assistants or any other device. These records do not become any less confidential or proprietary to the Company because I may commit some of them to memory or because I may otherwise maintain them outside of the Company's offices.

I agree that any Confidential Information of the Company is to be used by me solely and exclusively for the purpose of conducting business on behalf of the Company. I am expected to keep such Confidential Information confidential and not to divulge, use or disclose this information except for that purpose. If I resign or am terminated from my employment for any reason, I agree to immediately return to the Company all Records and Confidential Information, including information maintained by me in my office, personal electronic devices, and/or at home.

25.     Section III of the Agreement is headed "Non-Solicitation Of The Company's Customers And Employees" and provides:

COMPLAINT AND JURY DEMAND - Page 7

I agree that for a period of two (2) years immediately following termination or resignation of my employment for any reason, I will not do any of the following either directly or indirectly or through associates, agents, or employees:

    a. solicit, recruit or promote the solicitation or recruitment of any employee or consultant of the Company for the purpose of encouraging that employee or consultant to leave the Company's employ or sever an agreement for services; or

    b. solicit, participate in or promote the solicitation of any of the Company's clients, customers, or prospective customers with whom I had Material Contact and/or regarding whom I received Confidential Information, for the purpose of providing products or services that are in competition with the Company's products or services ("Competitive Products/Services"). "Material Contact" means interaction between me and the customer, client or prospective customer within one (1) year prior to my last day as a team member which takes place to manage, service or further the business relationship.

This two (2) year limitation is not intended to limit the Company's right to prevent misappropriation of its Confidential Information beyond the two (2) year period.

**D.      Code of Ethics & Business Conduct.**

26.      Wells Fargo takes numerous steps to protect its Confidential Information in addition to requiring employees to sign agreements like the Agreement quoted above.  Such steps include, among other things, the policies set forth in Wells Fargo's Code of Ethics & Business Conduct ("Code"), which Gordon agreed to at the inception of and as a condition of her employment with Wells Fargo.  The "Confidential Information" section of the Code provides, in pertinent part, as follows:

Your role in privacy protection is critical. As a team member, you will have access to confidential information about Wells Fargo, its customers, team members, and vendors that you are obligated to protect from unauthorized disclosure. Such information is intended solely for use within Wells Fargo and is limited to those with a business need to know. Confidential information acquired by a team member through his or her employment must be held in the strictest confidence and, except for a business reason, must never be discussed with anyone – not even family members. Such information is to be

COMPLAINT AND JURY DEMAND - Page 8

used solely for corporate purposes and never for personal gain and may not be used to compete with Wells Fargo.

You may not access confidential information without a business purpose. You must not disclose confidential information that you have obtained in the course of your employment to any other team member unless the other team member has a business need to know the information for the performance of his or her duties on behalf of Wells Fargo.

Wells Fargo protects the private, personal, and proprietary information of customers, vendors, and team members. Confidential customer information may not be disclosed to persons outside Wells Fargo except when its disclosure is required by law or in accordance with Wells Fargo's privacy policies and customer agreements. In addition, Wells Fargo may have entered into a confidentiality or nondisclosure agreement to protect a third party's confidential information and to prevent unauthorized disclosure or use of that information. You must be careful to honor those agreements.

*    *    *

Improper release of or unauthorized access to confidential information damages our customers' trust in Wells Fargo and can result in loss of business and even legal action. It also reflects on your ability to do your job and is a violation of company policy and this Code.

27.    The "Proprietary Information" section of the Code provides that "[p]roprietary information is information that is the property of Wells Fargo." It prohibits employees, among other things, from:

- Disclos[ing] or us[ing] any proprietary information in a manner that is harmful to Wells Fargo, useful to competitors, or for your own or another's gain[;]

- Keep[ing] any originals or copies (in electronic or any other form) of manuals, notebooks, drawings, notes, reports, proposals, other documents, materials, tools, or equipment or property belonging to Wells Fargo.

28.    Proprietary Information under the Code includes but is not limited to information regarding:

- Wells Fargo's business.

- The Company's financial performance, if it has not been publicly announced.

COMPLAINT AND JURY DEMAND - Page 9

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2

- Customers.

- Team members.

- Products, services, and pricing.

- Patents and other intellectual property Wells Fargo has not disclosed to the public, including inventions related to any of Wells Fargo's businesses.

- Systems plans and information.

- Data centers or other property information.

- Passwords and computer programs.

- Business plans.

- Marketing plans, strategies, and costs.

- Potential acquisitions and divestitures.

- Any nonpublic information that would be harmful to Wells Fargo if disclosed.

**E.     Gordon Breaches Her Legal and Contractual Obligations.**

29.     Unfortunately, Gordon has breached and is continuing to breach her legal and contractual obligations to Wells Fargo.

30.     In July 2017, Gordon had a list created of the Private Risk Management group's top 200 customers, for no discernible Company purpose.  On information and belief, Gordon has taken the list with her to her new employment with Lockton and is using it to solicit Wells Fargo customers on behalf of Lockton.

31.     Based on an internal investigation of its computer system, Wells Fargo has learned that on or about September 11, 2017, Plaintiff forwarded from the Wells Fargo computer system to her personal e-mail address a veritable treasure trove of the Company's Confidential and Proprietary Information, including but not limited to:

- The performance evaluations of nearly 100 Wells Fargo employees, along with a performance evaluation template;

COMPLAINT AND JURY DEMAND - Page 10

- Information on Company goals and requirements for insurance brokers;
- Private information, contact information, compensation information, and service history of Company employees;
- Lists of customers and their contact information;
- Proprietary information on avoidance, planning for, and coverage of insurable events;
- Lists of insurers and their contact information;
- Communication templates;
- Lists of vendors and their contact information;
- Internal Company office rankings.

32.     On information and belief, Gordon is using the foregoing Confidential and Proprietary Information of Wells Fargo to solicit Wells Fargo customers on behalf of Lockton, in violation of her legal and contractual obligations to Wells Fargo.

33.     Shortly before her resignation, Gordon instructed the insurance brokers under her supervision to e-mail the Company's customer lists and contact information to their personal e-mail addresses.  Gordon did not have the authority to issue such an instruction and did not obtain approval before issuing it.  On information and belief, such information is being used to solicit Wells Fargo customers for the benefit of Lockton in violation of Gordon's legal and contractual obligations to Wells Fargo.

34.     Upon learning of Gordon's breach of her legal and contractual obligations to Wells Fargo, the Company sent cease and desist letters to both Gordon and Lockton, to no effect.

35.     On information and belief, Gordon continues to breach her legal and contractual obligations to Wells Fargo, with the knowledge, encouragement, and assistance of Lockton, which at all relevant times had knowledge of Gordon's contractual and legal obligations to Wells Fargo.

COMPLAINT AND JURY DEMAND - Page 11

36.    Defendants' conduct is not privileged and has resulted in great and ongoing damage to Wells Fargo and USI.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Breach of Contract – Misuse of Confidential Information**

**(Against Gordon)**

37.    Plaintiffs repeat the allegations of paragraphs 1-36 as if the same were fully set forth at length herein.

38.    Plaintiff's Agreement with Wells Fargo is supported by good and valuable consideration, because Plaintiff entered into it upon the inception of her employment with Wells Fargo in consideration of her employment with and compensation by Wells Fargo.

39.    Under the terms of her Agreement with Wells Fargo, Gordon agreed that the Company's Confidential Information was to be used by her solely and exclusively for the purpose of conducting business on behalf of the Company; that she would not divulge, use, or disclose Wells Fargo's Confidential Information except to conduct business on behalf of Wells Fargo; and that upon her resignation she would immediately return to the Company all Confidential Information.

40.    As described above, Gordon has breached the Agreement by creating a list of 200 top Private Risk Management group customers and their contact information and, on information and belief, by using that list in her new employment with Defendant Lockton to solicit Wells Fargo customers to end their relationship with Wells Fargo and become Lockton customers.

41.    Gordon has also breached the Agreement by transmitting from the Wells Fargo computer system to her personal e-mail address massive amounts of Confidential Information relating to Wells Fargo policies and procedures, customers, and employees; by failing to return such Confidential Information upon her resignation from Wells Fargo; and, on information and

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

belief, by using such Confidential Information to solicit Wells Fargo customers to end their relationship with Wells Fargo and become Lockton customers.

42.     Gordon has also breached the Agreement by instructing insurance brokers under her supervision at Wells Fargo to e-mail Wells Fargo customer lists and contact information to their personal e-mail addresses without authority or prior approval.  Gordon did this shortly before her resignation from Wells Fargo and such Confidential Information has not been returned to the Company.  In addition, on information and belief, such Confidential information is being used by Gordon to solicit Wells Fargo customers to end their relationship with Wells Fargo and become Lockton customers.

43.     Gordon's breaches of the Agreement have caused Plaintiffs damages.

## SECOND CLAIM FOR RELIEF

### Breach of Contract – Solicitation of Wells Fargo Customers

### (Against Gordon)

44.     Plaintiffs repeat the allegations of paragraphs 1-43 as if the same were fully set forth at length herein.

45.     Under the terms of the Agreement, Plaintiff agreed that, for two years after her resignation from employment with Wells Fargo, she would not solicit, or participate in or promote the solicitation of, Wells Fargo customers with whom she had material contact or regarding whom she received Confidential Information, for the purpose of providing products or services in competition with the Company's products or services.

46.     On information and belief, Plaintiff has breached and is continuing to breach the Agreement by using Wells Fargo's Confidential Information to solicit, or assist Lockton in soliciting, such Wells Fargo customers, for the purpose of persuading them to terminate their relationship with Wells Fargo and to become customers of Lockton, to the exclusion of Wells Fargo.

47.     Gordon's breaches of the Agreement have caused Plaintiffs damages.

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2

### THIRD CLAIM FOR RELIEF

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against Gordon)**

48.     Plaintiffs repeat the allegations of paragraphs 1-47 as if the same were fully set forth at length herein.

49.     The Agreement between Gordon and Wells Fargo includes an implied covenant of good faith and fair dealing.

50.     The acts and omissions of Gordon described herein constitute breaches of the implied covenant of good faith and fair dealing including in the Agreement.

51.     Gordon's breaches of the implied covenant of good faith and fair dealing have caused Plaintiffs damages.

### FOURTH CLAIM FOR RELIEF

**Intentional Interference with Prospective Economic Advantage**

**(Against Both Defendants)**

52.     Plaintiffs repeat the allegations of paragraphs 1-51 as if the same were fully set forth at length herein.

53.     Wells Fargo has valid, existing contractual relations with its customers and reasonable business expectancies of continuing benefit from new and repeat business that Wells Fargo could obtain from its customers.

54.     As described herein, on information and belief Defendants knew of these relationships and have interfered and continue to interfere with Wells Fargo's existing economic relations and prospective economic relations, namely the new and repeat business that Wells Fargo could reasonably have expected from its customers.  Without lawful right or privilege, Defendants have interfered and continue to interfere with Wells Fargo's economic relations through their solicitations of business from Wells Fargo's customers, and their use of Wells Fargo's Confidential Information.

COMPLAINT AND JURY DEMAND - Page 14

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2

55.   On information and belief, Defendants' intentional interference with Wells Fargo's existing and prospective economic relations was and is being accomplished by improper means, including but not limited to Defendants' willful and malicious misappropriations of Wells Fargo's Confidential Information, and the solicitation of Wells Fargo's customers based on information that Defendants knew or should have known was unlawfully obtained and used through breaches of Gordon's Agreement with and legal obligations to Wells Fargo.

56.   Defendants' tortious conduct has caused Plaintiffs damages.

57.   Defendants' conduct was willful and malicious.

## FIFTH CLAIM FOR RELIEF

### Intentional Interference with Contract

### (Against Lockton)

58.   Plaintiffs repeat the allegations of paragraphs 1-57 as if the same were fully set forth at length herein.

59.   Wells Fargo has a valid and enforceable contract with Gordon prohibiting her from misappropriating, misusing, and failing to return the Company's Confidential Information, and from soliciting Wells Fargo customers.

60.   On information and belief, Lockton, without lawful right or privilege, has intentionally interfered and continues to interfere with those contractual provisions, thus interfering with Wells Fargo's contractual rights and expectations by encouraging, facilitating, and allowing Gordon to violate her contractual obligations to Wells Fargo to the benefit of Lockton.

61.   On information and belief, Lockton's interference was accomplished by improper means, including but not limited to Lockton's willful and malicious misappropriation of Wells Fargo's Confidential Information; the solicitation of Wells Fargo's customers based on information that Lockton knew or should have known was unlawfully obtained through

COMPLAINT AND JURY DEMAND - Page 15

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2

1   breaches of Gordon's Agreement with Wells Fargo; and continuing to encourage, facilitate, and

2   allow Gordon to violate her contract with Wells Fargo.

3        62.   Lockton's tortious conduct has caused Plaintiffs damages.

4        63.   Lockton's conduct was willful and malicious.

5   **SIXTH CLAIM FOR RELIEF**

6   **Breach of Fiduciary Duty of Loyalty**

7   **(Against Gordon)**

8        64.   Plaintiffs repeat the allegations of paragraphs 1-63 as if the same were fully set

9   forth at length herein.

10        65.   During the period Gordon was employed by Wells Fargo, she owed the

11   Company an undivided duty of loyalty, which, among other things, prohibited Gordon from

12   misappropriating Wells Fargo's Confidential Information and using it for her own benefit or

13   the benefit of third parties.

14        66.   Gordon breached her duty of loyalty to Wells Fargo by transmitting the

15   Company's Confidential Information to her own personal e-mail account and by otherwise

16   misappropriating such information and using it, for her own benefit and the benefit of Lockton,

17   in order to solicit Wells Fargo customers and to unfairly compete against the Company.

18        67.   Gordon's breaches of the duties she owes to Wells Fargo have caused Plaintiffs

19   damages.

20        68.   Gordon's conduct was willful and malicious.

21   **SEVENTH CLAIM FOR RELIEF**

22   **Aiding and Abetting Breach of the Fiduciary Duty of Loyalty**

23   **(Against Lockton)**

24        69.   Plaintiffs repeat the allegations of paragraphs 1-68 as if the same were fully

25   set forth at length herein.

26

COMPLAINT AND JURY DEMAND - Page 16

FPDOCS 33504083.2

70.     Defendant Lockton has assisted, aided, and abetted Gordon in the conduct constituting breach of her duty of loyalty to Wells Fargo, and continues to do so.

71.     Lockton has been and is aware of its role in assisting, aiding, and abetting the Gordon in breaching her duty of loyalty to Wells Fargo.

72.     Lockton has knowingly and substantially assisted Gordon in the conduct constituting breach of her duty of loyalty to Wells Fargo, and continues to do so.

73.      Lockton's tortious conduct has caused Plaintiffs damages.

74.     Lockton's conduct was willful and malicious.

## EIGHTH CLAIM FOR RELIEF

**Misappropriation of Trade Secrets, RCW 19.108.010 *et seq.***

**(Against Both Defendants)**

75.     Plaintiffs repeat the allegations of paragraphs 1-74 as if the same were fully set forth at length herein.

76.     Prior to the end of her employment with Wells Fargo, Gordon misappropriated, among other things, Wells Fargo's Confidential Information as set forth above.

77.     Lockton aided, abetted, and facilitated Gordon's theft and misappropriation of Wells Fargo's trade secrets.  Additionally, on information and belief, Gordon and Lockton are currently in possession, custody, or control of Wells Fargo's trade secrets and acquired that information by improper means.

78.     By misusing Wells Fargo's Confidential Information for their own benefit, Defendants misappropriated Wells Fargo's trade secrets.

79.     Gordon's breaches of the duties she owed Wells Fargo, and Lockton's material assistance and facilitation of the same, have caused Plaintiffs damages.  Pursuant to RCW 19.108.040, Plaintiffs seek recovery of the reasonable attorney fees they incur in this action. Plaintiffs are further entitled to recover two times their damages, appropriate royalties for the

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2

1   trade secrets Defendants misappropriated, and any amount by which Defendants were unjustly

2   enriched by their misappropriations.

### NINTH CLAIM FOR RELIEF

#### Conversion

#### (Against Both Defendants)

80.     Plaintiffs repeat the allegations of paragraphs 1-79 as if the same were fully set forth at length herein.

81.     Wells Fargo owned and had a proprietary right to the information taken by Gordon.

82.     By taking that information, divulging it to Lockton, and using that information for her own purposes to compete against Wells Fargo, Gordon intentionally asserted a right inconsistent with Wells Fargo's right to possess and control that information.

83.     On information and belief, Lockton aided, abetted, and assisted Gordon in converting Wells Fargo's Confidential and Proprietary Information to Gordon's and Lockton's own use.

84.     Gordon's conversion of Wells Fargo's property, and Lockton's material assistance and facilitation of the same, have caused Plaintiffs damages.

85.     Defendants' conduct was willful and malicious.

### TENTH CLAIM FOR RELIEF

#### Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

#### (Against Both Defendants)

86.     Plaintiffs repeat the allegations of paragraphs 1-85 as if the same were fully set forth at length herein.

87.     The information Gordon took with the knowledge and assistance of Lockton constitute trade secrets of Wells Fargo subject to protection under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

COMPLAINT AND JURY DEMAND - Page 18

FISHER & PHILLIPS LLP
1201 Third Avenue, Suite 2750
Seattle, WA 98101
(206) 682-2308

88.     This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use; it is not readily available to the public or to Wells Fargo's competitors. Wells Fargo spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

89.     Wells Fargo has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Company computer systems and records, and having policies that expressly prohibit the use, removal, and disclosure of such information outside of Wells Fargo.

90.     On information and belief, Lockton aided, abetted, and facilitated Gordon's theft and misappropriation of Wells Fargo's trade secrets.  Additionally, Defendants are currently in possession of Wells Fargo's trade secrets and acquired that information by improper means.

91.     The foregoing conduct constitutes an actual and threatened misappropriation and misuse of Wells Fargo's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 *et seq.*

92.     Gordon's misappropriation of Wells Fargo's trade secrets, and Lockton's material assistance and facilitation of the same, have caused Plaintiffs damages.

93.     Defendants willfully and maliciously misappropriated Wells Fargo's trade secrets, and Plaintiffs are therefore entitled to recover two times their damages and the reasonable attorney fees they incur in this action, appropriate royalties for the trade secrets that Defendants misappropriated, as well as any amount by which Defendants were unjustly enriched by their misappropriation.

## ELEVENTH CLAIM FOR RELIEF

### Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

### (Against Gordon)

94.     Plaintiffs repeat the allegations of paragraphs 1-93 as if the same were fully set

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

1   forth at length herein.

2       95.     Wells Fargo's computers, which were used by Gordon, are "protected

3   computers" within the meaning of 18 U.S.C. § 1030(e), because they are computers purchased

4   and owned by Wells Fargo to which Gordon was provided access.

5       96.     Gordon knowingly, intentionally, and with the intent to defraud Wells Fargo

6   accessed Wells Fargo's computer systems without authorization or beyond the scope of any

7   authorization Gordon had in an effort to download and transfer files containing Wells Fargo's

8   confidential and proprietary files, trade secrets, and other confidential information.  Gordon

9   transferred confidential and trade secret information, including confidential and sensitive

10   customer information, which she misappropriated from Wells Fargo to her personal e-mail

11   account under her own sole control.

12       97.     Gordon's unauthorized and fraudulent use of Wells Fargo's computer systems

13   has caused Plaintiffs damages.

14   **TWELFTH CLAIM FOR RELIEF**

15   **Unjust Enrichment**

16   **(Against Both Defendants)**

17       98.     Plaintiffs repeat the allegations of paragraphs 1-97 as if the same were fully set

18   forth at length herein.

19       99.     Defendants have been unjustly enriched at Plaintiffs' expense.

20       100.    As a result, Plaintiffs have been damaged.

21   **THIRTEENTH CLAIM FOR RELIEF**

22   **Civil Conspiracy**

23   **(Against Both Defendants)**

24       101.    Plaintiffs repeat the allegations of paragraphs 1-100 as if the same were fully set

25   forth at length herein.

26

COMPLAINT AND JURY DEMAND - Page 20

102.    Defendants conspired and agreed among themselves to engage in the unlawful and tortious conduct described herein, deliberately engaged in such conduct in furtherance of their unlawful plans and schemes, acted on behalf of one another at all relevant times, intentionally and/or knowingly accepted the illicit benefits of the conspiracy, and intentionally and/or knowingly participated in, profited from, and/or ratified the misconduct of one another.

103.    Each Defendant is liable for the conduct of the other Defendants and any other participants in the conspiracy.

104.    Defendants' tortious conduct has caused Plaintiffs damages.

105.    Defendants' conduct was willful and malicious.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on their legal claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants:

1)    For the economic damages suffered by Plaintiffs in an amount to be proven at trial as well as costs, disbursements, and attorney fees;

2)    For punitive damages;

3)    For injunctive relief, enjoining Defendants from using, transmitting or disclosing Wells Fargo's trade secrets and proprietary and confidential information; and from soliciting or servicing clients or customers of Wells Fargo or recruiting Wells Fargo's employees;

4)    For an appropriate royalty for all trade secrets which Defendants misappropriated; and

//

//

COMPLAINT AND JURY DEMAND - Page 21

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

1       5)     For such other and further relief in Plaintiffs' favor and against Defendants as

2  the Court may deem just and equitable.

3       DATED this 8th day of December, 2017.

4                                FISHER & PHILLIPS LLP

5                          By */s/Catharine Morisset*

6                            Catharine Morisset, Esq., WSBA No. 29682

7                            1201 Third Avenue, Suite 2750

                               Seattle, WA 98101

8                            Tel.:  (206) 682-2308

                               Fax: (206) 682-7908

9                            cmorisset@fisherphillips.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FISHER & PHILLIPS LLP
1201 THIRD AVENUE, SUITE 2750
SEATTLE, WA 98101
(206) 682-2308

FPDOCS 33504083.2