# SUPPLEMENTAL DECLARATION OF LYNN RASMUSSEN

I, LYNN RASMUSSEN declare pursuant to 28 U.S.C. Sec 1746 as follows:

1. I am an adult, over the age of eighteen (18) years old, and I am competent to provide this Declaration.

2. I provide this Declaration in connection with Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion"). The information herein is true and correct and based on my personal knowledge.

3. I have reviewed Plaintiff's Motion, as well as the Affidavits of Tom Longhta and Patricia Myers, and the Exhibits.

4. Before resigning from WFIS, I took affirmative steps to return all WFIS property and to otherwise ensure that I was not taking any WFIS property or information. I have not accessed or used WFIS property or information since leaving WFIS.

5. I have not solicited any WFIS customers.

6. I did not "orchestrate" any resignations and did not solicit, recruit or promote the solicitation or recruitment of any employee or consultant of WFIS, including any of the individual defendants in this case.

7. WFIS and USI have roughly 6,000 employees between them.

8. Prior to the purchase, separately each company was one of the 10 largest insurance brokerage and consulting firms in the nation. Together, USI is one of the largest in the world.

9. The entire Private Risk Management ("PRM") team at WFIS, consisting of roughly 115 members, was responsible for approximately $25,000,000 in revenue per year.

10. It is false to say the nine (9) individuals who left WFIS generated $25,000,000 in revenue; those individuals were responsible for only a small fraction of that total annual revenue.

1

**EXHIBIT "J"**

Scanned by CamScanner

11. I became a VP and Regional Leader of Private Risk Management for WFIS in Tampa/St. Petersburg FL in 1999 and rose to the level of SVP, Head of Private Risk Management before I recently left WFIS. I've spent most of my career with WFIS. It was not my desire to work for USI, and I never signed the contract USI tried to require of all WFIS employees.

12. From the start, USI lost credibility with me by, among other things, making promises that were not kept. Immediately after the purchase deal became news, USI announced to me and others that it would be paying us a 10% retention bonus within 30 days of the purchase transaction closing.

13. This misinformation was repeated time and time again by USI's chairman and CEO, Mike Sicard, on the telephone and in person as he toured the country visiting WFIS offices.

14. The promised bonus then changed over the next several weeks. Ultimately, the final bonus structure differed depending upon the team member's job title, but in any event, the bonus was not to be payable until long after 30 days from closing as represented. It was also conditioned on execution of a new non-negotiable employment agreement presented by USI containing, among other things, overbroad restrictive covenants. Rather than 30 days after closing, I would not have received my first bonus payment until four (4) years post-closing, based on the last promise I heard about a retention bonus.

15. Needless to say, this type of misinformation (whether purposeful or through negligence), and the way it was handled, especially at the outset of a new relationship was off-putting to me as I was considering becoming an employee of USI. I deemed it as subterfuge to entice me to stay with a new company and sign a new contract based on false promises.

16. About three to four years ago USI acquired approximately 40 offices from Wells Fargo Insurance. It was called a "strategic divestiture" of locations that were out of the bank's

Scanned by CamScanner

primary footprint. It was common knowledge among many WFI team members that USI had laid off many of the people who were part of that acquisition within the first two years.

17. About three to four weeks before I resigned I received an email from Marcia Allen, the PRM Manager in Atlanta who said her team was very nervous after hearing that USI had laid off the entire personal insurance team they had acquired in another recent acquisition.

18. I am aware of confusion in the industry, among my own clients and within Wells Fargo, stemming from the recent sale of WFIS to USI and press releases indicating Wells Fargo would retain its personal insurance lines followed by additional press release indicating Wells Fargo is now divesting itself of such lines.

19. PRM clients in many instances also fall within what's commonly considered personal lines. As such, it is unclear which clients USI is improperly claiming as its own based on its purchase of WFIS and which stayed behind with Wells Fargo, but no longer have anyone to service their insurance needs.

20. This imprecision and lack of clear messaging has left Wells Fargo employees misinformed about its business and the business of USI. As such, Wells Fargo employees (including at least one in executive management) have not only contacted Lockton asking that it handle their own personal lines insurance going forward but have also asked Lockton to handle the insurance of the very customers USI claims as its own and who are put in the middle of this litigation.

21. While USI seeks to limit the information that can be given to insurance customers about Lockton and WFIS employees that went there, Wells Fargo continues to announce this information to its customers and employees and has essentially told those customers to feel free to do business with their former representatives.

Scanned by CamScanner

22. In this litigation, USI claims it has the right to enforce provisions within a contract I signed with WFIS and prevent those Wells Fargo customers from doing business with whomever they choose, while at the same time Wells Fargo employees are telling their customers to contact Lockton for their insurance needs.

23. In the months leading up to the purchase, WFIS faced numerous questions and concerns from customers and prospective customers due to the bad acts, criminal charges, licensing issues and seemingly endless bad press involving Wells Fargo and its affiliates - which made it difficult to do our jobs and be successful. During this timeframe, many of those same customers and prospective customers advised that they would be doing business elsewhere. Not surprisingly, based on all of the circumstances, I decided to sever all ties with WFIS.

24. I am not employed by Lockton Companies, LLC or Southeast Series of Lockton Companies, LLC. I am employed by Northeast Series of Lockton Companies, LLC.

25. I declare under penalty of perjury, that the foregoing is true and correct.

*[Signature]*
LYNN RASMUSSEN

12-21-2017
DATE

Scanned by CamScanner