# DECLARATION OF SHARON TRAUTEWIG

I, SHARON TRAUTEWIG declare pursuant to 28 U.S.C. Sec 1746 as follows:

1. I am an adult, over the age of eighteen (18) years old, and I am competent to provide this Declaration.

2. I provide this Declaration in connection with Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion"). The information herein is true and correct and based on my personal knowledge.

3. I have reviewed Plaintiff's Motion as well as the Affidavits of Tom Longhta and Patricia Myers, and the Exhibits.

4. Before resigning from WFIS, I took affirmative steps to return all WFIS property and to otherwise ensure that I was not taking any WFIS property or information. I have not accessed or used WFIS property or information since leaving WFIS.

5. I have not solicited any WFIS customers.

6. I did not solicit Roman Martinez, as he points out in his email attached, attached as Exhibit D to Ms. Myer's affidavit.

7. I have not solicited any WFIS employee to leave WFIS and was not solicited or recruited by any of the individual defendants in this case including Lynn Rasmussen.

8. From the start, USI lost credibility with me by, among other things, falsely promising team members immediately after the purchase deal was announced that USI would be paying a retention bonus. This turned out to be an illusory moving target. Sales representatives were first promised 5% of their total book of business. Then for the Private Risk team that was changed to a 10% retention bonus within 30 days of the purchase transaction closing.

**EXHIBIT "K"**

9. This misinformation was repeated time and time again by USI's chairman and CEO, Mike Sicard, on the telephone and as he toured the country visiting WFIS offices.

10. Ultimately, the final bonus structure differed depending upon the team member's job title, but in any event, the bonus was dramatically reduced and not to be payable until long after 30 days from closing as represented. It was also conditioned on execution of a new non-negotiable employment agreement presented by USI containing, among other things, overbroad restrictive covenants. Rather than 30 days after closing, I would not have received my first bonus payment until over one (1) year post-closing, based on the last promise I heard about a retention bonus.

11. Needless to say, this type of misinformation (whether purposeful or through negligence), and the way it was handled, especially at the outset of a new relationship was off-putting to me as I was considering becoming an employee of USI. I deemed it as subterfuge to entice me to stay with a new company and to sign a new contract based on false promises.

12. In the months leading up to the purchase, WFIS faced numerous questions and concerns from customers and prospective customers due to the bad acts, criminal charges, licensing issues and seemingly endless bad press involving Wells Fargo and its affiliates - which made it difficult to do our jobs and be successful. During this timeframe, many of those same customers and prospective customers advised that they would be doing business elsewhere. Not surprisingly, based on all of the circumstances, I decided to sever all ties with WFIS.

13. I am not employed by Lockton Companies, LLC or Southeast Series of Lockton Companies, LLC. I am employed by Northeast Series of Lockton Companies, LLC.

14. I declare under penalty of perjury, that the foregoing is true and correct.

_____  12/21/17
SHARON TRAUTEWIG

Scanned by CamScanner